We are next on 5-250-676 Green v. Little, and we have counsel here. Good morning, counsel. And on behalf of the appellant. Can you hear me, counsel? Mr. Hutnick, can you hear me? Barely, your honor. Okay. All right, so we have Mr. Hutnick attending remotely on behalf of the appellant, and on behalf of the appellee, Mr. Barsovich. Thank you. All right, counsel, are you ready to proceed? I can hardly hear you, your honor. I'm sorry. All right. I'll try to speak up then. Mr. Hutnick, if you're ready, you may proceed with your argument. I am in your honor. If it pleases the court, Mr. Barsovich, this case comes to this court for the circuit court appointment for Mr. Surgeon. In 2012, the testatrix, Maxine Little, claimed the trust. She died in 2018. The trust automatically went into effect. When the defendant found out Plaintiff was a trustee, he began to force the conduct to make it impossible for the plaintiff to order the trust and assume her responsibility. Ultimately, the plaintiff filed a petition for instructions that proceeded. The defendant ultimately filed a request to remove the trustee. The trustee filed a request and demand for an evidentiary hearing and finding of fact. The evidentiary hearing took place at the conclusion of which the judge removed the trustee and did not make a finding of fact. That brings it to this court. The notice of appeal was kindly filed. It's my understanding from the case law that when there is a bench trial, the judge presiding has the duty, the responsibility of providing a finding of fact so that if the case is pursued to an appellate court, as here, the justices of the appellate court will have an idea of what the judge in the trial court based the decision on. Did that judge use the proper standards, what law, etc., so that the justices of the appellate court are not put in the position of having to speculate, virtually guess, as to the reason for the decision? In this particular case, not only did the judge have that duty, but by our formal request, demand for a finding of fact, the judge was required, in effect, to explain her reasoning for the removal of the trustee so that the appellate court would know without having to guess or speculate. What came out in the course of the evidentiary hearing was the fact that full admission from the defendant that the trust suffered no financial loss. There was no financial loss to the defendant himself, what he had to incur. The defendant admitted waiving his rights to get annual payments from the trust. He waived his rights to get annual accountings, and he admitted the trustee had done nothing wrong. He admitted that he was the one that claimed to be trustee with the one insurance company, and then based on all of that, the judge removed the trustee and didn't tell us why, other than saying that it was consistent with the purpose of the trust. Now, it could not possibly have been consistent with the purpose of the trust. It's a statement that Maxine Little appointed her niece, the plaintiff, Monique Green, to carry out Maxine Little's wishes that her son, her own child, and a double-emancipated son did not blow the money several hundred thousand dollars. The best evidence of that was the fact that in the trust itself was a requirement that there be annual payments for the year at an additional percentage, beginning with 10 percent, then the following year 15 percent, and so forth and so on, to prevent the defendant from wasting all of the money. So, the role of the plaintiff was clear. The evidence was clear. She had done nothing wrong, not wasted any money, and yet she was removed without explanation. She had no idea, based on the evidence, why she would have been removed just because it was consistent with the trust length, but it wasn't. And when you examine, the court examines the conduct of the defendant in this case to interfere with the trust, it shows that his mother's decision as to the expense of her provisions was well taken. So, to remove the person who was carrying out very clear wishes was wrong. And under the case law, and under our request, the judge was required to make the findings of fact. The fact that he didn't, our position is, should be reversed on that basis along and sent back for further proceedings, which would include the right of the plaintiff to be reimbursed for the expenses he incurred, rightfully, as the trustee. The next issue that came up in the case, which quite frankly was befuddling to me, was the issue of the plaintiffs. The request to remove the plaintiff as trustee was lengthy, was detailed, covered a period of five years, and accused the plaintiff of extensive wrongdoing and breach of duty. In response, we filed a lengthy response, including affirmative issues. Comes time for trial, and the judge rules that we can't go into all of those issues, because the defendant, without any prior notice, without any amended complainings, decided to limit his case to a one-year or a year-and-a-half period of time, 23, 24, 22, 23. And that's it. Well, the judge agrees, and we play it to the prize. In case law, we have a right to know what the issues are going to be, and then come trial, you can't proceed on an issue that wasn't pleaded and change the whole nature of the proceeding, which is exactly what the defendant did, and the judge agreed to let him do it. That alone would warrant a reversal. The third issue that came up in the case was the right to use information. We had obtained from the defendant's former attorney in his response to the attorney registration in this primary commission. We recognize and we make no issue of the fact that this was discretionary with Judge Hatcher. We understand that. But the exception to Rule 766 is when justice required, and here we had filing paperwork from the black law firm that had represented the defendant, telling him he wasn't the trustee at a time when he was maintaining to Everlake Insurance Company he was the trustee, and he continued with it, which resulted in Everlake filing a lawsuit to have the court determine to whom it should pay the money for the policy of insurance. We also saw from that paperwork that the defendant, once they had paid assistance of that law firm, knew from the very beginning of the trust and the rule of my client, and they began to take steps to have her removed before they even told her she was trustee. Granted it was a draft, but it was the year where they did it. It's right there for the world to see. Judge Kaplan should have at least considered that. The amount of weight that would be given is a different issue. So what we came away with, with all of this, is that the judge did not share with us what she based the decision on and why the fact that there was no wrongdoing on anybody's part that we were the trustee. Even if there was something extremely minor, which there was not, why do you remove a trustee that the district wanted to govern a son who she was worried about? What did you do with the money? We, in our pleas, our approach, argued that this was pursuant to a scheme to injure the plaintiff by running a cost on her, or legal fees and what have you, and then denying her the right to be reimbursed for those fees. And right during the course of questioning the defendant, we got him to admit she had done no wrong. Then we asked him, well, is she entitled to a fee? And he said, oh no, I can't think of any better proof of the scheme than his own admissions. And then there was this, when we questioned the defendant about any costs he had incurred, did he lose any money as a result of the conduct on the part of the trustee? And he said no. He was very, very clear in saying no. What made that so interesting, perhaps subtle, perhaps not, is that that meant that somebody else was paying the blake law firm for all of the legal fees. And I'm going to speculate, based on my experience as an attorney for a while, that those fees were probably at least $25,000 to $30,000 to keep this going on for five years. So what we're dealing with is a scheme where the defendant is paying an attorney, or someone is paying an attorney, to prevent the defendant from getting several hundred thousand dollars to which he's entitled to. And so that's what we encounter in this lawsuit, and that's why we believe this court to reverse the removal of the trustee and send the matter back for further proceedings, consistent with whatever this court may find. I don't know what else to say to the court. We've never encountered a case where someone who is entitled clearly to a lot of money, a lot of money, goes out of his way to prevent getting it, and then refuses to communicate from the documents included with the petition for instructions. This court has seen the extent to which the trustee, himself, and through her attorney, made to try to get information and people to talk to us. They wouldn't do it. The process, they continued to oppose the trust, kept it in the probate court where it didn't belong, and then finally, after several years, gratuitously dismissed, and then said, well, we'll want you removed because you didn't do your job. We asked the defendant several times in the course of questioning him, how in the world was the trustee supposed to do her job when she didn't know she was trustee? Well, he saw his answer. He didn't know. He couldn't be held responsible. They're all able to say, well, he should have, but she didn't. So that's where we're up against, and based on that happy place, somehow or another, the judge in the trial court came to the conclusion that the trustee should be removed. If ever there was an error, it's there. That's the nature of our case, S.G. Thorpe versus... All right. Thank you, Mr. Hudnick. Thank you, Mr. Hudnick. I see you're out of time, and you will have the opportunity to address this court in rebuttal in a moment. I can't understand you, Your Honor. Mr. Hudnick, you will have the opportunity to address this court in rebuttal. Thank you for your Mr. Hudnick, just a second.  Just a second. No, thank you. All right. Mr. Carceri, you may proceed. Thank you, Your Honor. John Barr Civic and Mr. Hudnick, John Barr Civic for the appellate defendant at trial level. This is not a complex case. The trust, as Mr. Hudnick indicated, was to pay out on June 23rd of 23. The trustee refused to pay out... Mr. Hudnick, if you could mute yourself, please. Thank you. All right, Counselor, you may proceed. Thank you. The trustee was to pay out all the proceeds, all the assets of the trust by June 23 of 23. She refused. She had no plan to pay it out. We actually filed a motion to require a payment. They objected. We had to have a hearing. The judge took our advisement and asked us to try to settle. We did a mediation. She paid out $40,000 and refused to give. During the trial, she testified that she had no plans to pay anything out. That's in addition to the fact that she would not settle with the Everlake Insurance Company to get a final check. She never provided an accounting, but it was primarily she wouldn't pay out the money. Now, Mr. Hudnick is correct that there was one other issue to be resolved. Fees, what attorney's fees should be paid. They had never filed a motion to have anything heard. They had never filed a detailed itemization of what fees they want. That's open. They don't have to be heard. But that should not have anything to do with paying out money. Mr. Hudnick says that my client waived any payments, waived any accounting. That's new to me. I have never heard that. There's nothing in the record. He stipulates that Blake sold $25,000, $30,000, and somehow there was some conspiracy. He spends a lot of time blaming my client. The beneficiaries of the trust don't have an obligation. It's the trustee that's supposed to do things. He says that we said there was nothing wrong. There was a problem at the beginning of was there a trust or not. And so we've suggested that she shouldn't be blamed for that part of this. We're talking about after there was an Everlake insurance issue, which is addressed in the briefs, my client said the money should go to the trust. At that point, everything's done, and we can't get the money. So the issues that he brings up, he says the core plan are that I proceeded without a complaint, and then he refers to the complaint in his argument. The complaint was filed on January 19th of 23, and the arguments that we made in the hearing were in that complaint. Was anything ever filed attacking the complaint, a motion to make it more definite and certain, or anything to dismiss the complaint? There were a number of items specified in the complaint. The ones we primarily relied on were failure to pay, failure to account, and not acting in the best interest of my client to resolve the payment from Everlake. But the trustee never filed anything attacking the complaint, is that correct? I'm sorry? The trustee never filed anything attacking the complaint. Correct. You mentioned the record a while ago. The record indicates there was a hearing on July 11th, 2025, but I did not see in the record any transcript or bystander's report of that first day of the hearing. Are you aware of any record of the July 11th hearing? There were some continuances for an illness or an eye issue with Mr. Hotbeck, and I think that was one of those that started it. We never really did anything. All right. Thank you. So since that was a complaint, I'm not quite sure what he's talking about. We did limit our testimony to what we thought the issues rose. Why waste time on things when we were trying to work out the beginning of the trust? So after we requested, we had the Everlake issue. My client says, Everlake, please pay the trust. My client says, we want the money. At that point, we continued to ask for money back in. But at trial, at this argument, and in the brief, Mr. Hotbeck deflects. Attacks the integrity of the judge, attacks the integrity of my client, suggests that there was no evidence, alleges the defendant concealed the existence of the trust, no evidence of that, plaintiff alleges a conspiracy to interfere, no evidence of that, plaintiff alleges defendant acted to cause her harm. We had not asked for any money from the trustee. We had not filed a motion for sanctions. And then Mr. Honda complains that the proceeding in probate court was inappropriate. There was a will. My client was the sole beneficiary of the will. When it was determined that all the assets were in the trust, the probate court, in essence, closed the case. But how do we know if there should be action under the will until we know where the assets are? Mr. Hotbeck then goes to this issue about an ARDC complaint. He files the ARDC complaint. He sets up this procedure by where he wants to get evidence admitted. I don't think that the rule applies to parties. The rule applies to lawyers. But nonetheless, it was irrelevant. The evidence he wanted to get in was that my client signed a document from Ever Lake indicating he was a trustee. He did. It's in the record. He told the judge. That was the issue with Ever Lake. They didn't know who to pay. And when he finally hired lawyers, understood that he wasn't the trustee, he said pay into the trust. So even if the rule applies, which I don't think it does, there's no justice denied. He admitted it. It's in the record. And then finally, he suggests that the judge then make findings. Well, in the judge's order on the second page, she says the court finds that and goes one, two, three, four, finding the requirements of the statute. Now, maybe Mr. Hotbeck would have liked some additional findings, but the fact is that she made findings. So he complains that there was no complaint there was. He complains that there's no finding and there was. And all we want is a trustee to do what the court or what the trust says. The trust indicated the payments. This is not a mistake. This is an abdication of authority. We don't allege that he stole any money. We don't allege that the money went any particular place. The trust is over. It concluded on June 23rd at 23, five years after she died. Give us the money. And then there is a final issue, just another indication that the trustee doesn't want my client to get any money. After she was removed, the new trustee and attorney from Belleville, P.K. Johnson, worked with Everlight to get the money paid into the trust. That is ready to be done. But Everlight wants the lawsuit dismissed. And there's a petition before the court to address that. The trustee, the other trustee at that point, objected as well. And so the appellee asked the courts to not disturb the ruling of the trial court. Everything the trustee has done has been to abdicate, to interfere with the responsibility, her responsibility, and the board's of the trust. If the court reverses the ruling and sends it back, my client will never get the money he should have got in 2023. The order that the judge entered on August 14th, 2025, paragraph E, required the trustee or former trustee, Monique Green, to file an accounting within 14 days of that order. I assume that's told by the appeal maybe. But has there ever been an accounting prior to that date? Has there ever been a showing of what the trust was holding in or what the trust expenses were, anything about the trust? We received some documents. Mr. Putnam's client provided us an income tax record once. We did get some records. We never got an itemized account. And nor, primarily, did we ever get a signature from the trust. So we got some documents, but we didn't get what I would interpret to be the full amount. If we were to affirm the trial court's ruling, is that the end of the case or will there be another hearing on trustee fees? Does that go back to it? Trustee fees or attorney's fees would be the ordinary issues. Thank you. All right. Any questions? Justice Haggert? One. Mr. Barasevic, the appellant raised the issue that there was no reason for the court to discharge the trustee. How do you answer that? So it's except for this issue about attorney's fees. The trust is completed. The money is collected. And so this isn't a mistake of operation. This is a refusal by the trustee to fulfill her obligation under the trust, which is to distribute the money. She just says no. So that's certainly not acting in the best interest of the beneficiary. There's only one beneficiary, Mr. Little. He asked her to do it. She refused. So we think that's an act. It's not in the best interest of the trust or the beneficiary. Thank you. Any questions? Justice Stein? No other questions. All right. Thank you, counsel. Mr. Hudnick, you may unmute yourself and proceed with any rebuttal argument when you're ready. Okay. Mr. Hudnick? There we go. You may proceed. I have two points I'd like to share with the court in rebuttal. If everything the defendant is arguing is true, then the judge in the trial court would have had no difficulty in making findings of fact and reflecting that. She didn't do that, which means this court now is going to have to speculate as to whether or not that was the basis. And we don't think that you can have a meaningful review of a case on appeal when that type of situation exists. That's exactly why the requirement exists for the judge to share with all of us why the decision was made and what legal standard was adhered to. The second point I'd like to reinforce is, yes, we would love to have gone into everything that was done and that was available in the pleadings. But when the judge sustained objections and limited the case to only the one year, year and a half, which was a totally different approach to review than the pleadings, we couldn't do that. Granted, I'm not a drinking violent and I don't mind arguing to any judge in a trial court, but there is a limit. And once the judge has ruled and said that's out, that's it. So on the one hand, she made it impossible for us to go into all of the proof that was relevant and then the defendant turned around and says, well, since they didn't come forward with that proof, which we objected to, there must be wrong. Again, we think the case needs to come back simply because the trustee didn't do anything wrong. And yes, there is a scheme and we would have proven it had it not been for the judge's ruling limiting the evidence, even though the pleadings provided for it. So we thank the court for its consideration. And that was the only point I would share, though I'll put a tail on the dog. All along, we tried, and the letters show it, to give the defendant the money he was entitled to. He didn't take it. He didn't take it. He wouldn't communicate. I don't understand why someone would do that. I don't understand why someone would have a law firm paid to prevent getting some money. But I think that in and of itself establishes there was some type of a scheme which was an abuse of the legal process. And it's wrong. So we thank the court. Thank you, Mr. Hudnick. Any questions for Mr. Hudnick? No, thank you. Justice Hackett? No, thank you. All right, thank you, counsel. We will take this matter under advisement and issue an order in due course. Have a great day. Thank you.